UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHAWN DIONTE HAIRSTON,

    Plaintiff,

v.

CITY OF TACOMA, et al.,

    Defendants.

CASE NO. C14-5420 BHS

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON MUNICIPAL LIABLITY AND NEGLIGENCE

This matter comes before the Court on Defendants City of Tacoma and Brett Beall's ("Defendants") motion for summary judgment (Dkt. 31). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On May 20, 2014, Plaintiff Shawn Hairston ("Hairston") filed a 42 U.S.C. § 1983 complaint against Defendants. Dkt. 1 ("Comp."). Hairston alleges that Officer Brett Beall ("Officer Beall") violated his Fourth Amendment rights by using excessive force. *Id.* ¶¶ 3(t)–(w). Hairston also alleges that the City of Tacoma ("City") is liable for his injuries because Officer Beall acted pursuant to the City's policy or custom. *Id.* ¶ 3(u). Finally, Hairston alleges state law claims for negligence, assault, and battery. *Id.* ¶¶ 3(a)–(r).

ORDER - 1

1   On July 29, 2015, Defendants moved for summary judgment on Hairston's
2   municipal liability and negligence claims. Dkt. 31.  On August 18, 2015, Hairston
3   responded.  Dkt. 38.  On August 21, 2015, Defendants replied and moved to strike
4   evidence attached to Hairston's response.  Dkt. 39.

## II. FACTUAL BACKGROUND

6   In the early hours of May 24, 2011, Officer Beall and Officer Steven Butts
7   ("Officer Butts") were dispatched to a burglary in progress at a house in Tacoma,
8   Washington.  Dkt. 33, Declaration of Brett Beall ("Beall Dec."), Ex. 1 at 4.  Dispatch
9   reported that three black males jumped a fence into the backyard and were trying to get
10  into the house.  *Id.*  The officers arrived at the address, and parked their patrol car east of
11  the house.  *Id.*  After exiting their patrol car, the officers heard noises coming from the
12  backyard.  *Id.*

13  As the officers approached the house, the officers saw a black male wearing a
14  black hoodie jump the fence from the backyard and begin running westbound.  *Id.* at 5.
15  Officer Butts began chasing the individual on foot, while Officer Beall ran back to the
16  patrol car.  *Id.*  As Officer Beall began driving westbound, he saw a gold-colored sedan
17  pull out of the parking lot behind the house.  *Id.*  According to Officer Beall, the driver of
18  the car was a black male wearing a dark hoodie similar to the one worn by the individual
19  who had jumped the fence.  *Id.*

20  The driver of the gold sedan—later identified as Hairston—attempted to turn right
21  at an intersection, but ended up crashing into a house on the corner.  *Id.*; Dkt. 32,
22

1  Affidavit of Jean Homan ("Homan Aff."), Ex. 1 ("Hairston Dep.") 29:8–15. Officer

2  Beall and Hairston have differing accounts as to the subsequent events.

3  **A.    Officer Beall's Statement**

4        According to Officer Beall, Hairston exited out of the passenger side of his car and

5  started running. Beall Dec., Ex. 1 at 5. Officer Beall observed Hairston holding

6  something black in his hand, and thought it could be a gun. *Id.* Officer Beall exited his

7  patrol car and shouted "Show me your hands!" *Id.* Officer Beall ran after Hairston. *Id.*

8        Hairston reached a chain-link fence and began climbing over it. *Id.* Officer Beall

9  shouted at Hairston to stop and show his hands. *Id.* Officer Beall deployed his taser as

10 Hairston was going over the fence. *Id.* at 5–6. Officer Beall thought his use of the taser

11 had been successful because Hairston fell to the ground on the other side of the fence. *Id.*

12 at 6.

13       Officer Beall climbed over the fence as Hairston got up and began running again.

14 *Id.* Officer Beall caught up with Hairston and shouted for him to stop and show his

15 hands. *Id.* Officer Beall says he grabbed Hairston's left shoulder and attempted to pull

16 him backwards and to the ground. *Id.*

17       According to Officer Beall, Hairston quickly spun to face him and struck him in

18 the left cheek. *Id.* Officer Beall says he struck the side of Hairston's head with the butt

19 of his gun in a hammering motion. *Id.* Officer Beall states that Hairston then "struck me

20 on my left ear with one hand while grabbing my right forearm with his other hand . . . ."

21 *Id.* Officer Beall yanked his right arm free and attempted to strike Hairston again with

22 the butt of his gun. *Id.* Officer Beall landed a glancing blow. *Id.*

1   Hairston then struck Officer Beall's forehead with the object Hairston held in his
2 right hand. *Id.* Officer Beall says he was knocked onto the ground and landed on his
3 back. *Id.* As he lay on his back, Officer Beall saw Hairston run away from him. *Id.*
4 Officer Beall says that Hairston then stopped running and began rotating to his right,
5 towards where Officer Beall lay. *Id.*

6   Officer Beall drew his gun and fired six rounds. *Id.* According to Officer Beall,
7 he "stopped firing immediately after [Hairston] fell to the ground." *Id.* Officer Beall got
8 up and walked to where Hairston was lying on his stomach. *Id.* Officer Beall saw that
9 Hairston's hands were empty, and noticed a black cell phone on the ground near
10 Hairston's right side. *Id.*

11   Hairston sustained three gunshot wounds in his back, lower leg, and rear end.
12 Hairston Dep. 58:11–16.

13 **B.   Hairston's Statement**

14   According to Hairston, he was not involved in the suspected burglary. Hairston
15 Dep. 27:1–15. Hairston states that Officer Beall deployed his taser while Hairston was
16 still in his car. Hairston Dep. 29:18–24, 35:4–13. Hairston heard a popping sound and
17 saw the taser probes go by him in the car. Hairston Dep. 35:10–12. He then exited the
18 passenger side of the car and began running. Hairston Dep. 35:9–14. Hairston came to
19 the fence and jumped over it. Hairston Dep. 42:17–20. Hairston ran straight ahead
20 before coming to a dead end in the neighboring yard. Hairston Dep. 42:21–43:21.

21   Hairston began to head back toward Officer Beall, who was still on the opposite
22 side of the fence. Hairston Dep. 43:21–25. Hairston states that Officer Beall did not say

1  anything or shout any warnings to stop.  Hairston Dep. 44:10–15.  Hairston was heading

2  in Officer Beall's direction when he heard a popping sound.  Hairston Dep. 45:2–9.

3  Hairston attempted to go to his left and run.  Hairston Dep. 45:21–46:1.  Hairston says

4  Officer Beall tackled him from behind.  Hairston Dep. 46:6–11.  Hairston fell forward on

5  his knees.  Hairston Dep. 46:7–10.  Hairston then jumped back up and started running.

6  Hairston Dep. 53:2–5.

7      Once he started running again, Hairston heard gunshots and fell to the ground.

8  Hairston Dep. 53:5–6.  Hairston denies shoving and striking Officer Beall at any point.

9  Hairston Dep. 56:19–57:1.  Hairston also denies grabbing Officer Beall's arm.  Hairston

10  Dep. 58:2–4.

11                                **III. DISCUSSION**

12  **A.    Motion to Strike**

13      Before turning to Defendants' motion for summary judgment, the Court addresses

14  Defendants' motion to strike.  Defendants ask the Court to strike various exhibits

15  attached to Hairston's response because they have not been authenticated and contain

16  hearsay.  Dkt. 39 at 1–3.  Defendants also seek to strike Hairston's declaration because it

17  contains inadmissible hearsay and irrelevant facts.  *Id.* at 3–5.

18      "A trial court can only consider admissible evidence in ruling on a motion for

19  summary judgment."  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

20  "Authentication is a 'condition precedent to admissibility,' and this condition is satisfied

21  by 'evidence sufficient to support a finding that the matter in question is what its

22  proponent claims.'"  *Id.* (quoting Fed. R. Evid. 901(a)).  "[U]nauthenticated documents

1   cannot be considered in a motion for summary judgment." *Id.*  Hearsay evidence is also

2   inadmissible, and may not be considered on summary judgment. *See id.* at 778.

3       Defendants argue that Exhibit 5 should be stricken because it is unauthenticated.

4   Dkt. 39 at 3.  Exhibit 5 is a copy of a Tacoma Police Department report documenting

5   where shell casings were found.  *See* Dkt. 36-4.  Hairston has not presented any evidence

6   to authenticate this report.  *See* Fed. R. Evid. 901(b)(7).  The Court therefore grants

7   Defendants' motion to strike Exhibit 5.

8       Defendants also contend that Exhibit 6 should be stricken because it is

9   unauthenticated and contains hearsay.  Dkt. 39 at 2.  Exhibit 6 is a transcription by

10  Shirley Johnson ("Johnson") of a recorded interview of Officer Beall by Hairston's

11  criminal defense team.  *See* Dkt. 36-6.  Defendants argue that a deposition must be

12  authenticated through a court reporter's certification that the deposition is a true record of

13  the deponent's testimony.  Dkt. 39 at 2 (citing *Orr*, 285 F.3d at 774).  Exhibit 6, however,

14  does not purport to be a deposition.  Johnson has also submitted a declaration stating that

15  she listened to the recorded interview of Officer Beall and that Exhibit 6 is a true and

16  correct copy of her transcription.  *See* Dkt. 36-6.  The Court therefore finds that Exhibit 6

17  has been authenticated.  Defendants also argue Exhibit 6 contains hearsay that does not

18  fall under the exception in Federal Rule of Evidence 804(b)(1).  Dkt. 39 at 2 n.2.  Upon

19  review, the Court finds that Officer Bealls's statements in Exhibit 6 do not constitute

20  hearsay under Rule 801(d)(2), which provides that an opposing party's statements are not

21  hearsay when offered against the opposing party.  *See* Fed. R. Evid. 801(d)(2).  Although

22  the Court declines to strike Exhibit 6, the Court notes that the contents of Exhibit 6 do not

1  alter the Court's conclusions regarding Hairston's municipal liability and negligence

2  claims.  Moreover, the Court's ruling as to admissibility of Exhibit 6 for the purposes of

3  summary judgment is not determinative for the purposes of trial.

4        Defendants next argue that Exhibit 7 should be stricken because it is

5  unauthenticated.  Dkt. 39 at 3.  Exhibit 7 is a copy of a Tacoma Police Department

6  incident report.  *See* Dkt. 36-5.  Again, Hairston has not presented any evidence to

7  authenticate this report.  *See* Fed. R. Evid. 901(b)(7).  Because Exhibit 7 has not been

8  properly authenticated, the Court grants Defendant's motion to strike Exhibit 7.

9        Finally, Defendants move to strike Hairston's declaration because it contains

10 hearsay, argument, and irrelevant facts.  Dkt. 39 at 3.  The Court agrees that most of

11 Hairston's declaration is irrelevant and inadmissible.  *See* Dkt. 36, Declaration of Shawn

12 Hairston.  The Court, however, declines to strike the declaration.  The Court will

13 explicitly identify any fact from Hairston's declaration that is relevant to the instant

14 motion.

15 **B.     Motion for Summary Judgment**

16       Defendants move for summary judgment on Hairston's municipal liability and

17 negligence claims.[1]  Dkt. 31 at 9.  Defendants also argue that Hairston cannot seek

18 punitive damages against the City.  *Id.*

---

[1] Defendants do not seek summary judgment on Hairston's excessive force, assault, and battery claims, or on Officer Beall's claim of qualified immunity. Dkt. 31 at 9. Although Hairston's response brief includes arguments regarding his excessive force, assault, and battery claims, *see* Dkt. 38, the Court will only address Hairston's municipal liability and negligence claims in this order.

### 1. Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The

nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

### 2.     Municipal Liability

Hairston alleges that the City is liable under § 1983 because Officer Beall acted pursuant to the City's official policy or custom. Comp. ¶ 3(u). Defendants argue that Hairston has failed to produce sufficient evidence to support his municipal liability claim. Dkts. 31, 39.

"While local governments may be sued under § 1983, they cannot be held vicariously liable for their employees' constitutional violations." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013). Instead, a municipality may only be held liable under § 1983 if the execution of its policy, custom, or practice caused a municipal employee to violate an individual's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978). To establish municipal liability, Hairston must demonstrate that: (1) he was deprived of a constitutional right; (2) the City had a policy; (3) the policy amounted to a deliberate indifference to his constitutional rights; and (4) the custom or policy was the moving force behind the constitutional violation. *Mabe v. San Bernardino County*, 237 F.3d 1101, 1110–11 (9th Cir. 2001).

Hairston argues that the City had a policy or custom of not taking officer shootings seriously and a focus on protecting officers involved in police shootings. Dkt. 38 at 12.

To support this theory, Hairston contends that the officers laughed at him and told him to "shut the 'f' up" while he lay on the ground after being shot. *Id.* at 13. Hairston also argues that the City did not thoroughly investigate the shooting. *Id.* at 15. Hairston, however, does not present evidence of other similar incidents. "A plaintiff cannot prove the existence of a *municipal* policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989). The only incident Hairston discusses is his own, but this incident standing alone is insufficient to establish that the City had a custom or policy. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

Hairston also points to the Tacoma Police Department's policy of collecting service weapons after a police shooting and making officers off-limits for 72 hours before questioning. Dkt. 38 at 14. Hairston has not presented specific evidence establishing that this policy amounts to a deliberate indifference to Hairston's constitutional rights. *See Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997) ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."). Hairston also has not submitted specific evidence demonstrating an affirmative link between this policy and the alleged constitutional violation in this case. Put another way, Hairston has not established that this policy was the moving force behind the alleged violation of his constitutional rights. *See City of Canton v. Ohio*, 489 U.S. 378, 389 (1989).

In sum, Hairston has not presented sufficient evidence to support his municipal liability claim against the City. The Court grants Defendants' motion on this claim.

### 3. Negligence

Hairston alleges that Officer Beall acted negligently because he breached a duty not to use excessive force. Comp. ¶¶ 3(i)–(j). Hairston also claims that the City negligently hired, trained, and supervised Officer Beall. *Id.* ¶¶ 3(n)–(p); *see also* Homan Aff., Ex. 3 at 32. Defendants argue that any negligence claim is barred by the public duty doctrine. Dkt. 31 at 21–22.

The threshold determination in a negligence action is whether the defendant owes a duty of care to the plaintiff. *Taylor v. Stevens County*, 111 Wn.2d 159, 163 (1988). "Under the public duty doctrine, no liability may be imposed for a public official's negligent conduct unless it is shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (*i.e.*, a duty to all is a duty to no one)." *Id.* (citations and internal quotation marks omitted). In Washington, the duties owed by police officers "are owed to the public at large and are unenforceable as to individual members of the public." *Chambers-Castanes v. King County*, 100 Wn.2d 275, 284 (1983). The City's general responsibility to hire, train, and supervise police officers is also owed to the public. *See Osborn v. Mason County*, 157 Wn.2d 18, 28 (2006) ("[A] broad general responsibility to the public at large rather than to individual members of the public simply does not create a duty of care." (internal quotation marks omitted)).

Washington courts have recognized four exceptions to the public duty doctrine: (1) legislative intent; (2) failure to enforce; (3) rescue doctrine; and (4) special relationship. *Bailey v. Town of Forks*, 108 Wn.2d 262, 268 (1988). "If one of these

exceptions applies, the government will be held as a matter of law to owe a duty to the individual plaintiff." *Cummins v. Lewis County*, 156 Wn.2d 844, 853 (2006).

Hairston has failed to establish that any of the four exceptions apply in this case. Hairston asserts that "one of the exceptions to the [public duty] doctrine is direct contact or privity." Dkt. 38 at 18. "Direct contact or privity" is an element of the special relationship exception. *Cummins*, 156 Wn.2d at 854. The special relationship exception applies where "(1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) gives rise to justifiable reliance on the part of the plaintiff." *Id.* Although Hairston mentions the first element, Hairston has not established that all three elements of the special relationship exception are satisfied in this case. Hairston also does not point to any evidence suggesting that the other three exceptions to the public duty doctrine apply. Because Hairston has not established that any duty was owed to him as an individual, the Court grants Defendants' motion on Hairston's negligence claims.

**4. Punitive Damages**

Although not specifically pled in his complaint, Hairston asserts that he intends to seek punitive damages against the City. *See* Homan Aff., Ex. 3 at 45. Municipalities are immune from punitive damages under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Because Hairston cannot seek punitive damages against the City as a matter of law, the Court grants the City's motion on this issue.

ORDER - 12

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion to strike (Dkt. 39) is **GRANTED in part** and **DENIED in part** as stated herein. Defendants' motion for summary judgment (Dkt. 31) is **GRANTED**. Hairston's municipal liability and negligence claims are **DISMISSED**.

Dated this 16th day of September, 2015.

BENJAMIN H. SETTLE
United States District Judge